**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X

MARTIN J. WALSH, Secretary of Labor, United States Department of Labor

Plaintiff,

-against-

DEPENDABLE CARE LLC d/b/a HOPETON CARE, et. al.

Defendants.

-------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

19-CV-1081 (RPK) (ST)

**TISCIONE, United States Magistrate Judge:**

## INTRODUCTION

The government brings this motion seeking default judgment against the last remaining defendant in this case, Dependable Care LLC ("Hopeton Care"). It alleges Hopeton Care violated the Fair Labor Standards Act by engaging in a pattern and practice of paying employees below the statutorily required wage for overtime hours they worked while employed by Hopeton Care between November 13, 2015 and November 10, 2017. It further alleges that Hopeton Care failed to keep employment records required under the FLSA. Hopeton Care has consented to default judgment being entered against it. The government seeks $1,339,372.18 in back wages for the employees affected, an equal amount in liquidated damages, plus post-judgment interest. It also seeks an order permanently restraining and enjoining Hopeton Care and its agents from violating Sections 7,11, and 15 of the FLSA in the future. For the reasons herein, I recommend the government's default motion be GRANTED, that the damages requested be awarded, and that an order enjoining Hopeton Care from violating the FLSA in the future be entered.

## BACKGROUND

### I. Facts

The following facts are taken from Plaintiff's amended complaint, as a defendant is deemed to have admitted all the well-pleaded allegations therein when, as here, the Clerk of Court has entered default against it. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir. 1992).

Hopeton Care was a home care agency, which provided services to Medicaid and Medicare beneficiaries, including home health aides, personal aides, and nursing services. Pl. Am. Compl. ¶¶ 5, 6, ECF No. 44. Hopeton Care employees would take customers' vital signs measurements, and assist with home care tasks like administering medications, toileting, preparing food, and providing mobility assistance. *Id.* at ¶ 6. Hopeton Care regulated the employment of its employees since at least November 13, 2015. *Id.* at ¶ 7.

Defendant's employees included home health aides, personal care aides, and nurses. *Id.* at ¶ 65. Hopeton Care had an annual gross sales or business volume of $500,000 or more between November 13, 2015 and November 10, 2017, and its employees handled and used goods or materials that were moved in or produced for commerce. *Id.* at ¶¶ 69, 70.

The Government alleges the Defendant violated the FLSA in its payment practices to the approximately 769 employees listed in the complaint. *Id.,* Exh. A. During the time period covered by the complaint, Defendant had three separate practices for paying employees, based on whether, during a single workweek, they worked only 24-hour shifts, only shifts of less than 24 hours, or a mix of the two.

Employees who worked only 24-hour shifts were paid a fixed daily rate between $150 and $180 for the entire 24-hour shift. *Id.* at ¶ 78. Those employees worked at least 15 hours of

that 24-hour shift. *Id.* at ¶ 79. They usually worked multiple 24-hour shifts in a single workweek, generally between three and seven shifts per week. *Id.* at ¶ 80. Defendant did not pay these employees any overtime premiums where they worked more than 40 hours in a workweek. *Id.* at ¶ 81.

Employees who only worked shifts of fewer than 24-hours in a single workweek were paid by the hour, usually between $10 and $17 per hour, though sometimes more. *Id.* at ¶ 92. These employees generally worked between 40 and 96 hours per week, though some worked more. *Id.* at ¶ 93. The Defendant did not pay any overtime premiums to some of these employees who worked more than 40 hours in a week. *Id.* at ¶ 94. Some of these employees were paid overtime premiums, but they were paid rates that were less than one-and-one-half times the employees' regular legal hourly rates. *Id.* at ¶ 97.

Employees who worked a mix of 24-hour shifts and hourly shifts in a single workweek were paid both a fixed daily rate for the 24-hour shifts worked and an hourly rate for the hours worked outside of 24-hour shifts. *Id.* at ¶ 102. In these cases, the Defendant's pay practices were a combination of both the pay practices described above. *Id.* Additionally, Defendant did not properly aggregate the total hours these employees worked to determine overtime rates and compensation. *Id.*

Additionally, Hopeton Care did not maintain and preserve accurate records of the actual hours worked by its domestic employees. *Id.* at ¶ 110. It also did not maintain or preserve records of all wages paid to its domestic employees between November 13, 2015 and May 20, 2016. *Id.* at ¶ 112.

## II. Procedural History

Hopeton Care, along with fellow defendants Farrah Rubani and Yitzi Davidowitz, executed a Statute of Limitations Tolling Agreement with the government on October 25, 2017, which was terminated on February 22, 2019. *Id.* at ¶¶ 73-74.

On February 22, 2019, the initial complaint was filed in this action, then *Acosta v. Dependable Care et. al.*. *See* Pl. Compl., ECF No. 1. Defendant Hopeton Care subsequently timely waived service. *See* Waiver, ECF No. 8. On January 10, 2020, an amended complaint was filed. *See* Pl. Am. Compl., ECF No. 44. Hopeton Care continued defending itself in this action until October 26, 2020 when it, in a letter to the Court, wrote, "…Dependable [d/b/a Hopeton] Care has been dissolved as an entity. Dependable Care is not in the position to further defend itself in this matter and will accept a default judgment." *See* Oct. 26, 2020 Ltr., ECF No. 73. Accordingly, the Court directed the Clerk of Court to issue a certificate of default against Hopeton Care, which was issued on June 2, 2021. *See* Def., ECF No. 91.

On July 20, 2021, the Court entered a consent judgment as to defendants Yitzi Davidowtiz and David Neuberg. *See* July 20, 2021 Ord., ECF No. 98. On August 10, 2021, the Court entered another consent judgment as to defendant Farrah Rubani, leaving Hopeton Care as the only remaining defendant in the action. *See* Aug. 10, 2021 Ord., ECF No. 102.

On September 3, 2021 the government submitted the instant motion for default judgment against Hopeton Care. *See* Mot. for Def. Judg., ECF No. 103.

## LEGAL STANDARD

Under Rule 55 of the Federal Rules of Civil Procedure, a Plaintiff may obtain a default judgment where the Defendant has failed to plead or otherwise defend an action. F.R.C.P. R. 55(a). Where the Defendant has failed to plead or otherwise defend an action, the Clerk of Court

must enter the party's default. *Id.* Once a default is entered against a defendant, it is deemed to have admitted all the well-pleaded allegations in the complaint pertaining to liability. *Greyhound Exhibitgroup,* 973 F.2d at 158. However, the Court retains discretion on whether to enter a final judgment. *Enron Oil Corp. v. Diakuhara,* 10 F.3d 90, 95 (2d Cir. 1993).

It is Plaintiff's burden on a default judgment motion to demonstrate "that the unchallenged allegations and all reasonable inferences drawn from the evidence provided establish the defendant's liability on each asserted cause of action." *Xi Qun Xu v. JNP Bus Serv.,* 16-CV-245, 2018 U.S. Dist. LEXIS 54238, *6 (E.D.N.Y., Fed. 26, 2018) (citing *City of New York v. Mickalis Pawn Shop, LLC,* 645 F.3d 114, 137 (2d Cir. 2011); *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981)).

In other words, for a Court to order default judgment, it must find the Plaintiff's factual allegations in his complaint, when accepted as true, establish liability as a matter of law. *Finkel v. Romanowicz,* 577 F.3d 79 (2d. Cir 2009). At the default stage, "[t]he legal sufficiency of [a plaintiff's allegations] is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)." *Liberty Mut. Ins. Co. v. Project Tri-Force, LLC*, No. 18-CV-427 (AJN), 2019 U.S. Dist. LEXIS 50720, 2019 WL 1349720, *2 (S.D.N.Y. Mar. 26, 2019) (citing *Belizaire v. RAV Investigative and Sec. Servs., Ltd.*, 61 F. Supp. 3d 336, 344 (S.D.N.Y. 2014)); *accord Belichenko v. Gem Recovery Sys.*, No. 17-CV-1731 (ERK) (ST), 2017 U.S. Dist. LEXIS 211057, 2017 WL 6558499, *2 (E.D.N.Y. Dec. 22, 2017) (citing *Priestley v. Headminder, Inc.*, 647 F.3d 497, 506 (2d Cir. 2011) and *Zapolski v. Fed. Republic of Germany*, No. 09-CV-1503 (BMC) (LB), 2009 U.S. Dist. LEXIS 122077, 2009 WL 5184325, *1 (E.D.N.Y. Dec. 28, 2009)). *Twombly* and *Iqbal* command that all elements of the plaintiff's claim must be plausibly alleged in the

complaint, such that the complaint contains more than “naked assertions,” or allegations that amount to “sheer possibility,” containing instead “factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” *Iqbal,* 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557).

Whether to enter a default judgment is “left to the sound discretion of the District Court.” *Enron Oil Corp,* 10 F.3d at 95. Courts consider three factors when deciding whether to enter a default judgment, the same ones considered when determining whether to vacate a default judgment: (i) whether the defendant’s default was willful; (ii) whether the defendant has a meritorious defense; and (iii) the level of prejudice to the non-defaulting party if the motion is denied. *Kaneka Corp. v. Purestar Chem Enter. Co.,* No. 16-CV-4861, 2018 U.S. Dist. 74674, *6 (E.D.N.Y. May 1, 2018).

Default judgments are extreme remedies. As such, they are “generally disfavored and are reserved for rare occasions.” *See Enron Oil Corp.* 10 F.3d at 96. Where doubts exist as to the appropriateness of a default judgment, the doubt should be resolved in favor of the defendant. *Id.*

Even upon default judgment, a court still has a duty to ensure there is a basis for the damages the plaintiff seeks. *Fustok v. Conticommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). A damages inquest is not necessary where the damages are liquidated and susceptible to mathematical computation. *Flaks v. Koegel*, 504 F.2d 702, 707 (2d Cir. 1974). Instead, the damages assessment may be accomplished by evaluating detailed affidavits and documentary evidence submitted by the plaintiff. The damages to be awarded must be ascertained “with reasonable certainty.” *Styka v. My Merchs. Serv. LLC*, No. 14-CV-6198, 2016 U.S. Dist. LEXIS 34238, *11 (E.D.N.Y. Mar. 15, 2016) (quoting *Credit Lyonnais Sec., Inc. v. Alcantarea,* 183

F.3d 151, 155 (2d Cir. 1999)) (*adopted by* 2016 U.S. Dist. LEXIS 90977 (E.D.N.Y. June 28, 2016)).

## DISCUSSION

### I. Default Judgment Should Be Entered Against Dependable Care LLC (d/b/a Hopeton Care) on Both Claims

#### a. Violation of § 7 and §15(a)(2) of the FLSA

Section 7 of the FLSA (29 U.S.C. § 207) prohibits any employer from employing an employee engaged in commerce or in the production of goods for commerce for greater than 40 hours in a workweek without compensating said employee for any excess hours at a rate of one-and-one-half times the employee's regular hourly pay rate. *See* 29 USC § 207(a)(1); *Jian Long Li v. Li Qin Zhao*, 35 F. Supp. 3d 300, 305 (E.D.N.Y. 2014). This regulation also applies to employees "employed in an enterprise engaged in commerce or in the production of goods for commerce." *Id.* An additional provision in the FLSA provides that "No employer shall employ any employee in domestic service in one or more households for a workweek longer than forty hours unless such employee receives compensation for such employment in accordance with [the provisions for employees engaged in commerce]." 29 U.S.C. § 207(l).

Plaintiff has alleged, and defendant has therefore admitted, that Hopeton Care was a home care agency and employed the employees listed in the complaint as, "home health aides, personal care aides, and nurses, among others." Pl. Am. Compl. at ¶¶ 5, 65. Those employees provided services which included taking vital measurements, administering medications, toileting, preparing food, and mobility assistance. *Id.* at ¶ 6.

Domestic service employees under the FLSA include those who perform "services of a household nature…in or about a private home" such as "companions…nurses…home health aides, [and] personal care aides…" 29 C.F.R. § 552.3. Under the FLSA, "employment of

persons in domestic service affects commerce." 29 C.F.R. § 552.2(b). Thus, Hopeton Care's employees are covered employees under FLSA § 7.

Additionally, employees of Hopeton Care would be covered employees under FLSA "enterprise theory" as Hopeton Care was an "enterprise engaged in commerce or in the production of goods for commerce" and thus subject to the FLSA overtime regulations. 29 USC § 207(a)(1). An employer is an enterprise where it "has employees engaged in commerce or in the production of commerce, or…employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and "whose annual gross volume of sales made or business done is not less than $500,000…" 29 U.S.C. § 203(s)(1)(A). Plaintiff has pled, and Defendant has therefore admitted, that Hopeton Care "had domestic service employees handling and using goods or materials that have been moved in or produced for commerce, such as cleaning products, food, sterilization, and/or other medical supplies." Pl. Am. Compl. ¶ 70. Plaintiff has also pled, and Defendant has therefore admitted, that Hopeton Care "had an annual gross volume of sales made or business done in an amount not less than $500,000 for the period…covered by this complaint." *Id.* at ¶ 69. Therefore, Plaintiff's well-pleaded facts establish that the employees listed would be covered under FLSA § 7 as domestic service employees engaged in commerce and as employees for an enterprise engaged in commerce.

Plaintiff's complaint also establishes that these employees were not paid overtime at a rate of one-and-one-half times the regular legal pay rate for hours worked per week in excess of 40. Plaintiff alleges, and Defendant therefore admits, that Defendant did not pay overtime premiums to domestic service employees who performed 24-hour shifts when those employees worked more than 40 hours in a single week. *Id.* at ¶ 81. Defendant also failed to pay overtime

premiums to some hourly shift employees who worked in excess of 40 hours per week and, when it did, it often paid improper overtime rates that were less than one-and-one-half times the regular hourly rate. *Id.* at ¶ 94, 97. And, Defendant combined these practices with employees who worked both 24-hour shifts and hourly shifts, and failed to properly aggregate total hours worked to determine proper overtime rates. *Id.* at ¶ 102.

Thus, Plaintiff has established that Hopeton Care did not compensate these employees for hours greater than 40 per week at one-and-one-half times their regular pay as required under FLSA § 7. As Plaintiff has plausibly alleged facts to support all elements of its claim, it has met the default judgment standard on this claim.

**b. Violations of Sections 11(c) and 15(a)(5) of the FLSA**

The FLSA requires employers to maintain and preserve records of actual hours worked by their employees who are covered by Section 6 and 7(a) of the FLSA, which includes domestic service employees. 29 CFR § 516.2. It also requires employers to maintain and preserve records of all wages paid to those employees. *Id.* Plaintiff has alleged, and Defendant has therefore admitted, that it did not maintain and preserve records of actual hours worked by all domestic service employees, including failing to record the actual hours worked each day by employees who worked 24-hour shifts. *Id.* at ¶ 110-111. Defendant also has admitted it failed to maintain and preserve records of all wages paid to domestic employees for the period from November 13, 2015 to May 20, 2016. *Id.* at ¶ 112.

Therefore, Plaintiff has established Defendant violated Sections 11(c) and 15(a)(5) of the FLSA.

**c. Discretionary Default Judgment Factors**

Additionally, the factors courts consider in deciding whether to exercise their discretion and enter a default judgment favor entry of such a judgment in this case.

First, it is clear Defendant's default was willful. It consented to the default being entered in its October 26, 2020 letter to the Court.

Second, it does not appear Defendant has a meritorious defense. While Defendant raised some defenses in its answer to the amended complaint, it subsequently abandoned most of them when it admitted to the facts in the complaint. The only defense the Court could find remaining after the admission to the facts in the complaint was a statute of limitations defense, as asserted in Defendant's answer. However, Defendant admitted it knowingly and voluntary entered into a Statute of Limitations Tolling Agreement on or about October 25, 2017, which did not expire until the complaint was filed. Pl. Am. Compl. ¶ 72. Given that the FLSA provides for a two-year statute of limitations on violations (three years if the violations are willful), the action is timely, as the tolling agreement would have tolled the statute of limitations prior to two years after the first violations alleged in the complaint. Therefore, the Court can think of no meritorious defense, and the Defendant certainly has not presented one.

Finally, the government and the employees whose rights it brings this case to vindicate would be prejudiced by a denial of the motion. Hopeton Care has dissolved, ceased motion practice, and consented to default judgment. There are no other steps the government can take beyond this motion to achieve judgment in this case.

Therefore, because the complaint states two plausible claims for relief and the default judgment factors support it, I recommend the Court grant Plaintiff's motion and enter default judgment against Dependable (Hopeton) Care.

## II. Plaintiff's Documentary Evidence Establishes to "A Reasonable Certainty" That It is Entitled to the Damages It Requests

### a. Back Wages

Plaintiff requests $1,339,372.18 in back wages for the employees affected, an equal amount in liquidated damages, plus post-judgment interest. Allegations of liability are admitted upon default, but allegations of damages are not. *Greyhound Exhibitgroup*, 973 F.2d at 158.

The FLSA provides for the payment of unpaid minimum or overtime wages as damages in an action such as this. *See* 29 U.S.C. § 216(b).

Plaintiff has submitted close to 2,000 pages of documents including its back wage computation spreadsheets for all the affected employees and an affidavit by its investigator establishing how it calculated the back wages owed. *See* Oliveira Dec., ECF No. 103-5; Exh. 3, 4, 5, ECF Nos. 103-8-103-10. I will summarize the general process utilized to arrive at the $1,339,372.18 back wage calculation below.

The investigation performed by the government involved a review of weekly payroll registers turned over by Hopton Care, as well as interviews with former employees. Oliveira Dec. ¶¶ 9-12, ECF No. 103-5. In calculating overtime back wages, pursuant to 29 C.F.R. § 778.5, the government used as a minimum legal hourly wage rate the New York State minimum wage, which was higher than the federal minimum wage throughout the period covered by the complaint. *Id.* at ¶ 23.

The government did receive payment records for the period between May 20, 2016 and November 10, 2017. *Id.* at ¶ 15. For that period of time, back pay damages were calculated as follows.

For the listed employees who only worked 24-hour shifts during a single workweek, the government found that those employees worked a minimum of 15 hours of compensable time

during those shifts. *Id.* at ¶ 26. That number was arrived at by deducting from 24 hours the maximum deductible sleep time (8 hours) and by crediting Hopeton with two 30-minute meal breaks. *Id.* Thus, for each 24-hour shift worked, the government calculated an employee should have been credited with 15 hours of compensable work time. The government then added up those employees' total paid wages and divided them by the total calculated compensable hours in that workweek to arrive at the actual payment rate per hour by Hopeton during that week. *Id.* at ¶ 27. If that payment rate was below the legal New York State minimum wage, back wages would include both the amount necessary to bring the wage on the first 40 hours up to the minimum wage and the amount necessary to bring the overtime hourly wage up to one-and-one-half times that legal minimum wage. *Id.* at ¶ 29. If a 24-hour shift employee was paid at least the New York State minimum hourly wage, back wages would just include the amount necessary to bring that employee's overtime wage up to one-and-one-half times their hourly wage multiplied by the number of hours worked each week in excess of 40. *Id.* at ¶ 30.

For employees who only worked hourly shifts less than 24 hours, the government checked the hourly rate to ensure it was above the minimum wage, then included in back wages the amount required per hour to bring that employee up to one-and-one-half times their regular hourly rate and multiplied that amount by the number of hours worked per week over 40. *Id.* at ¶ 38. Where some overtime was paid, but not enough, Hopeton was credited for the overtime that was paid, and back wages only included the additional payment necessary to bring the overtime wages to the required one-and-one-half times the regular hourly wage for all hours worked in excess of 40 per workweek. *Id.*

For individuals who worked both 24-hour shifts and hourly shifts of less than 24 hours, the government combined both the above practices to calculate back wages. *Id.* at ¶ 32.

As discussed above, Hopeton Care did not have pay or time records for the time period from November 13, 2015 to May 19, 2016. *Id.* at ¶ 44. To calculate the back wages owed during that period, the government's investigator calculated the average amount owed to each employee in back wages from May 20, 2016 through November 10, 2017, the time period which the government did have documentation for, then divided that by 77, the number of weeks in that time period, which gave the government the average amount in back wages owed to each employee per week. It then multiplied that number by the number of weeks between November 13, 2015 and May 19, 2016 to arrive at the back wages owed during that period. *Id.*

I am convinced from the explanation of the calculation process and the extensive supporting documentation provided that the process used by the government in this case ascertained "with reasonable certainty" the amount owed to Hopeton Care's employees in back wages. I therefore recommend the Court award damages for back wages in the amount of $1,339,372.18.

**b. Liquidated Damages**

The government also seeks liquidated damages of $1,339,372.18; the same amount as requested to compensate for back wages.

The FLSA provides, "Any employer who violates the provisions of section 6 or section 7 of this Act shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). It further provides that "if the employer shows…that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that [it] was not a violation of the [Act], the court may, in its sound discretion, award no liquidated damages or award any amount…" 29 U.S.C. § 260.

However, the burden to show a reduction is warranted is on the employer, who must show such good faith through "plain and substantial evidence." *Brock v. Wilamowsky,* 833 F.2d 11, 19 (2d Cir. 1987); *see also Khan v. IBI Armored Servs., Inc.,* 474 F. Supp. 2d 448, 459 (E.D.N.Y. 2007). Here, the Defendant has defaulted and has put forth no such showing. Therefore, there is no reason to reduce the liquidated damage award, and I recommend the Court award an additional $1,339,372.18 in liquidated damages pursuant to 29 U.S.C. § 216(b).

**c. Post-Judgment Interest**

Plaintiff is entitled to post-judgment interest on money awards as a matter of right. *Ahmed v. Subzi Mandi, Inc.,* No. 13-CV-3353, 2014 U.S. Dist. LEXIS 115228, *19 (E.D.N.Y. May 27, 2014) (citing *Holness v. Nat'l Mobile Television, Inc.* 09-CV-2601, 2012 U.S. Dist. LEXIS 67890, 2012 WL 1744847, *7 (E.D.N.Y. Feb. 14), *report and recommendation adopted as modified,* 2012 U.S. Dist. LEXIS 67868, 2012 WL 1744744 (E.D.N.Y. May 15, 2012)); *see also* 28 U.S.C. § 1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.").

Therefore, I recommend the Court grant Plaintiff a total of $2,678,744.36 plus post-judgment interest against Hopeton Care.

## III. The Court Should Grant the Injunction Requested by Plaintiff

Plaintiff also asks that the Court issue an injunction against Hopeton Care, ordering that, "Hopeton Care, its officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with them are permanently restrained and enjoined from violating sections 7, 11, and 15 of the FLSA." Prop. Ord., ECF No. 103-15.

Under the FLSA, the District Court is provided "broad, equitable powers" to restrain violations of the FLSA. *Brock v. Casey Truck Sales, Inc.,* 839 F.2d 872, 879 (2d. Cir. 1988) (citing *Mitchell v. DeMario Jewelry, Inc.,* 361 U.S. 288 (1960); 29 U.S.C. § 217). Generally, a judgment against an employer for violations of the FLSA will include a damage award and an order "enjoining future violations of the Act." *Id.*

There are two factors courts consider in whether to impose such an injunction: "the previous conduct of the employer and the dependability of his promises for future conduct." *Solis v. SCA Rest. Corp.,* 938 F. Supp 2d 380, 404-05 (E.D.N.Y. 2013). Here, the employer violated the FLSA in a multitude of ways over the course of two years and failed to legally pay 769 of its employees. That is a substantially violative previous conduct by the employer which weighs towards an injunction. While Hopeton Care is dissolved, it is the government's contention that without the injunction, "Future violations of the Act could still occur if Hopeton Care began anew under [a] different name." Ma Dec. ¶ 39, ECF No. 103-1. The fact that Hopeton Care has dissolved makes it less likely that future violative conduct will occur, however, it still could under a different name, as the government points out. And, no assurances have been made to the Court or the government by Hopeton Care that it will not re-form or will re-form but will not violate the FLSA again. Therefore, the second factor also weighs in favor of issuing an injunction.

Thus, I recommend the Court issue the injunction as requested by the government.

## CONCLUSION

For the reasons discussed herein, I recommend the Court grant the government's default judgment motion against Hopeton Care, award $2,678,744.36 plus post-judgment interest in

damages, and issue an injunction enjoining Hopeton Care and its agents from violating the FLSA in the future.

**OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-CV-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

/s/
Steven L. Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
August 1, 2022